```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
THERESA A. COOK,

                    Plaintiff,                    MEMORANDUM
                                                     AND
          - against -                               ORDER

COMMISSIONER OF SOCIAL SECURITY,                 10 Civ. 3019 (NRB)

                    Defendant.
------------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Theresa Cook brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of defendant, the Commissioner of Social Security, to deny her application for disability insurance benefits. Plaintiff and defendant have both moved for judgment on the pleadings, including the administrative record, pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, defendant's motion is granted.

### PROCEDURAL HISTORY

On August 28, 2008, Cook filed an application for disability insurance benefits with the Social Security Administration. (Transcript of Administrative Record ("Tr.") 124.) In the application, Cook stated that she had been unable to work due to her disability since June 22, 2007. (*Id.*) On February 19, 2009, defendant sent a "Notice of Disapproved Claim" to Cook, denying her claim for benefits. (Tr. 62.) On April 15, 2009, Cook requested a hearing before an Administrative Law Judge ("ALJ") to review the determination. (Tr. 66.) On August 19, 2009, Cook appeared with

counsel at a hearing before ALJ Michael A. Rodriguez. (Tr. 20.) On September 8, 2009, Judge Rodriguez issued a decision finding that Cook was not "under a disability, as defined in the Social Security Act, from June 22, 2007 through the date of this decision." (Tr. 17.) On September 23, 2009, Cook sought review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. (Tr. 4.) The Appeals Council denied her request for review on March 23, 2010. (Tr. 1.) Represented by counsel, Cook filed her complaint in this Court on April 8, 2010.

## BACKGROUND

Cook was born on June 12, 1977. (Tr. 61.) She has a Master's Degree in Social Work from Fordham University. (Tr. 25.) Beginning in 2002, she worked at Manufacturers & Traders Bank ("M&T Bank") as a business associate and teller. (Tr. 27.) In June of 2007, she began experiencing problems using her hands which made it difficult to do her job. (Tr. 28.) On June 22, 2007, she took a medical leave of absence and her employment was subsequently terminated. (Tr. 29.) Prior to working at the bank, Cook had worked as a camp counselor during the summers from 1997 to 2000, and as a babysitter from 2000 to 2001. (Tr. 48-50.) She had also worked as a receptionist for a school in 1999, and as a receptionist for a docking company in 1996. (Tr. 144.)

Cook has multiple sclerosis. (Tr. 228.) At the time of her application for benefits, her treating physician was Dr. Brian

Apatoff at the Judith Jaffe Multiple Sclerosis Clinical Care & Research Center, located at Weill Cornell Medical College. (Tr. 196.) A letter from Dr. Apatoff dated January 10, 2008 states:

> Theresa Cook is a patient under my care for treatment of multiple sclerosis, a neurologic disorder. Ms. Cook has been on long term disability. (Indefinitely) I have advised Ms. Cook, that it is important for her to avoid physical overexertion and emotional distress, as these factors can exacerbate her condition. If you have any medical questions regarding this patient, please call me at the above listed number. (Tr. 228.)

Dr. Apatoff was never contacted by the Social Security Administration, and thus never completed a residual functional capacity assessment of Cook. He appears to have been contacted by plaintiff's counsel only after the hearing before the ALJ took place. (Pl.'s Ex. A.) An administrator named I. Davis unsuccessfully attempted on three occasions to contact Dr. Apatoff at the Jaffe Center in September and October of 2008. (Tr. 215.) On October 15, 2008, Cook informed Davis that Dr. Apatoff no longer worked at the Jaffe Center. (Tr. 166.) While Davis made no further attempts to contact Dr. Apatoff, the Jaffe center provided Davis with its records of Cook's previous treatment at the center by Dr. Apatoff. (Tr. 196-214.)

On February 11, 2009, Cook was examined by a consulting neurologist, Dr. Kautilya Puri of North Disability Services in Hartsdale, NY. The report prepared by Dr. Puri found Cook to be normal and without limitation in every respect, except for "[m]ild difficulty tandem walking." (Tr. 225-227.)

Judge Rodriguez reviewed both the Jaffe Center records and the Puri report prior to the hearing and heard testimony from Cook and from Victor Alberigi, a vocational expert. (Tr. 20-60.) Cook testified that she had good days and bad days (Tr. 45-46.), that she was unable to stand for long periods (Tr. 30.), that she had trouble with her memory and focus (Tr. 31.), that she had hand tremors and numbness throughout her body (Tr. 35-36.), that she had difficulty writing legibly or performing fine manipulation (Tr. 40.), and that she tended to drag her right leg when walking (Tr. 43.). Cook also testified that she took a prescribed medication called Rebif by injection every other day, and that she experienced side effects including flu-like symptoms, tremors, fatigue, and dizziness. (Tr. 41.) Alberigi testified that, assuming a hypothetical employee could sit for up to six hours a day, stand or walk for up to two hours total with the option to sit or stand at will, lift or carry no more than ten pounds, perform occasional fine manipulation, and could not climb stairs or ladders or crawl, that person could perform a job similar to Cook's prior position as a receptionist. (Tr. 54.)

In his decision, Judge Rodriguez found that "the objective documentary medical evidence demonstrates that the claimant has the residual functional capacity to perform sedentary work." (Tr. 14.) Specifically, Rodriguez cited Dr. Puri's examination report finding that Cook's gait and station were normal, that she needed no help

getting on and off the examining table, that her hand and finger dexterity were intact, that her grip strength was 5/5 bilaterally, that strength in her upper and lower extremities was normal, and that only mild limitations to gait were observed. (Tr. 15.) Rodriguez also noted that the Jaffe records showed the following: in December 2006, Cook was doing well, tolerating her prescription well, and reported no new symptoms (*Id.*); in April 2007, she reported her right hand shaking and right foot dragging, and was found to have right lower extremity strength of 4+/5 and trace distal weakness involving the upper extremity, decreased vibration in the left upper and lower extremity, and some difficulty with heel and toe walking (*Id.*); in June 2007, Cook reported increased hand tremors and difficulties tolerating heat and humidity (*Id.*); in October 2007, Cook reported episodic fatigue and faintness when exposed to heat and humidity (*Id.*); and in June 2008, Cook reported continued sensitivity to heat and episodic fatigue, left upper eyelid jumping and right hand shaking when performing fine motor activities, and examination revealed a right upper extremity strength of 4+/5 and decreased vibration in the left upper and lower extremity. (Tr. 16.)

Judge Rodriguez concluded that "the record fails to document the claimant having any significant exacerbation of her symptoms since her alleged onset date." (*Id.*) He also considered a functional capacity questionnaire prepared by I. Davis, which found

that "the claimant retains the residual functional capacity to perform light work activity and that she possesses some occasional postural limitations and that she must avoid exposure to extreme heat." (*Id.*) The ALJ found Davis's assessment to be inconsistent with both the objective medical evidence and Cook's testimony, "both of which show that the claimant possesses slightly greater exertional and non-exertional limitations, yet are [sic] not disabling to the extent so as [sic] to preclude her from performing her past relevant work." (*Id.*) However, the ALJ also found that Cook's statements about "the intensity, persistence, and limiting effects of [her] symptoms are not credible, to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) He accepted Alberigi's testimiony as credible, concluding that Cook met the description in the hypothetical he had offered Alberigi, and thus that she could perform her past relevant work as a receptionist. (Tr. 17.)

On June 14, 2010, more than nine months after the hearing, Dr. Apatoff wrote an "Attending Physician Statement of Disability" stating his opinion that Cook's "condition has left her completely and permanently disabled, and unable to perform any work activities, as of July 1, 2007." (Pl.'s Ex. A.)

## DISCUSSION

**I. Standard of Review**

The Social Security Act provides that a person is entitled to disability benefits when he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The scope of judicial review under the Act is limited to determining whether the Commissioner's final decision is based upon the correct legal standard and is supported by substantial evidence. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lamay v. Comm'r Of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009). Because "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record," *Clark*, 143 F.3d at 118, the Commissioner's decision must be upheld if there is substantial evidence supporting it, even if substantial evidence also supports the contrary result. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). A court may affirm, modify or reverse the Commissioner's decision with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).

**II. Five-Step Analysis**

Social Security regulations establish a five-step analysis for determining whether a claimant is eligible for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). The first step is to determine whether the claimant is engaged in substantial gainful activity. If so, then she will be found "not disabled." 20 C.F.R. § 404.1520(a)(4)(i). If not, the second step is to determine whether she has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities and is expected to last at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. If the claimant has a severe impairment, the third step is to determine, based solely on the medical evidence, whether the impairment meets or equals any of those listed in 20 C.F.R. § 404, Subpt. P. App. 1 ("Appendix 1"). If so, disability is presumed. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the fourth step is to determine whether the claimant is capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

The step four determination is made by assessing the claimant's residual functional capacity ("RFC"), which is defined as the most an individual can still do, taking into account the effects of her physical and mental limitations on her ability to perform work-related tasks. 20 C.F.R. § 404.1545. If, given her RFC, the claimant is unable to perform her previous work, the fifth

and final step is to determine whether there is other work in the national economy that the claimant is able to perform. 20 C.F.R. § 404.1520(a)(5)(v). For each of the first four steps, the claimant bears the burden of proof. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998). The Commissioner bears the burden on the fifth step. *Id.*

### III. The ALJ's Findings

At steps one and two, the ALJ found that Cook had not engaged in substantial gainful activity since June 22, 2007 and that she had multiple sclerosis. (Tr. 13.) At step three, the ALJ found that Cook's condition did not meet or equal an impairment listed in Appendix I. (*Id.*) At step four, the ALJ considered Dr. Puri's examination report, the Jaffe Center records containing treatment notes by Dr. Apatoff, and Cook's testimony to find that Cook remained able to sit for up to six hours a day, stand and walk for up to two hours a day, lift and carry objects weighing up to ten pounds, perform frequent reaching and occasional fine manipulation, but that she could not climb ropes, ladders, scaffolds, stairs, or ramps, and could not crawl. (Tr. 16-17.) The ALJ posed a hypothetical with these conditions to Mr. Alberigi, and accepted the testimony as credible that Cook's past work as a receptionist fell within these limitations. (Tr. 17.)

Cook's complaint presents what are essentially two separate challenges to the ALJ's findings. We consider Cook's second

-9-

challenge first, because it arises first under the five-step analysis. The challenge is that, at step three, the ALJ erred in finding that Cook's impairment did not meet or equal the criteria for multiple sclerosis found in listing 11.09A of Appendix I. Listing 11.09A refers to criteria found in 11.04B, requiring a claimant in Cook's circumstances to show "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" in order to be deemed disabled. Cook argues that the tremors in her right hand and the dragging of her right foot meet this standard.

    We do not agree. Although both of these symptoms were described in Dr. Apatoff's treatment notes from the Jaffe center, neither symptom was described as persistent nor were their effects sustained. To the contrary, Dr. Apatoff described Cook's right upper extremity tremor and paresis as minor (Tr. 196.), and both Dr. Puri and Dr. Apatoff observed that Cook's gait and station were normal (*Id.* at 196, 226.) Furthermore, Cook's own testimony about dragging her foot suggests that it was not a significant or persistent disorganization of motor function, but only that it required her to put forth more effort in concentrating when walking or using stairs. (Tr. 43.) Thus, we find that the record contained substantial evidence for the ALJ's conclusion that Cook's condition did not meet the criteria of listing 11.09A in Appendix I.

Cook's remaining challenge concerns the absence from the record of an RFC assessment by her treating physician, Dr. Apatoff. Cook argues that the ALJ erred in failing to develop the record by procuring an RFC assessment from Dr. Apatoff, and that the "treating physician rule" requires that Dr. Apatoff's opinion, expressed in a letter over nine months later, that Cook was "completely and permanently disabled, as of July 1, 2007," should now be given controlling weight. (Pl.'s Ex. A.)

First, we note that there was no objection by Cook's counsel at the hearing to the ALJ's use of Dr. Apatoff's treatment notes from the Jaffe center in lieu of a full RFC assessment. (Tr. 21.) Nor is there any reasonable excuse for counsel's failure to procure such an assessment himself from Dr. Apatoff prior to the hearing. However, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding . . . even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citation and quotations omitted). This rule stems from the Commissioner's regulatory obligation to develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant files for benefits. *Id.; see* 20 C.F.R. § 404.1512(d). The Commissioner must make "every reasonable effort"

to obtain medical reports from the claimant's medical sources, meaning that the Commissioner must:

> make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case. 20 C.F.R. § 404.1523(d)(1).

The regulations also expressly state that the absence of an RFC assessment from a treating source does not make the record incomplete. *See* 20 C.F.R. 404.1513(b)(6).

In the instant case, the record reveals that in September and October of 2008, an administrator requested records from Dr. Apatoff on three occasions, using information supplied by Cook indicating that the doctor worked at the Jaffe Center, and that the clinic responded by turning over Dr. Apatoff's treatment notes. (Tr. 194, 215-16.) We find that these efforts satisfied the Commissioner's obligations under 20 C.F.R. § 404.1512(d). Furthermore, there was nothing improper about the ALJ's careful and detailed use of Dr. Apatoff's treatment notes. To the contrary, the ALJ used these records properly to discredit an RFC assessment by I. Davis which found Cook to be capable of a higher level of work activity than her condition would in fact allow. (Tr. 16.)

Second, the "treating physician rule" requires only that the treating physician's opinion be given controlling weight if it is

-12-

well-supported by medically acceptable techniques and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). The general statement that Cook was "completely and permanently disabled, as of July 1, 2007," made in a letter written nine months after the hearing, and inconsistent with his contemporaneous notes as well as the opinion of another doctor who examined Cook, does not fall within this rule. *See* 20 C.F.R. § 404.1527(3)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, there was no violation of the treating physician rule.

There is the separate question of whether Dr. Apatoff's belated letter supports a remand at this stage. 42 U.S.C. § 405(g) provides, in pertinent part, that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." We find that the letter does not meet this standard for two reasons. First, as discussed, the letter does not inform in a meaningful way an assessment of Cook's condition during the relevant time frame. Although the letter also described serious symptoms Cook has subsequently developed, as of June 14, 2010 when the letter was written, these are not relevant to the determination

Thus we conclude that Dr. Apatoff's June 14, 2010 letter is not new or material evidence warranting a remand, and that no good cause has been shown for the failure to offer the opinion expressed in the letter in the earlier proceeding. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 45-46 (2d Cir. 1991) (finding post-hearing letter from treating physician stating claimant "was unable to work" not material and no good cause shown for failure to offer the same opinion earlier).

## CONCLUSION

We recognize that Cook's multiple sclerosis is a progressive disorder which may (or may already have) become a disability entitling her to benefits, as of some yet-to-be-determined date subsequent to June 22, 2007. However, the ALJ's conclusion that Cook was not under a disability, as defined in the Social Security Act, from June 22, 2007 through September 8, 2009 was supported by substantial evidence in the record. For this reason, the final decision of the Commissioner to deny her application is affirmed.

**SO ORDERED.**

Dated:  New York, New York
        July 22, 2011

                                                    /s/ Naomi Reice Buchwald
                                                    NAOMI REICE BUCHWALD
                                                    UNITED STATES DISTRICT JUDGE

       Copies of the foregoing Order have been mailed on this date
to the following:

Plaintiff's Counsel
Barry I. Weiss
Freedman, Wagner, Tabakman & Weiss
130 North Main Street, Suite 202
New City, NY 10956

Defendant's Counsel
John E. Gura Jr.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007